OPINION
{¶ 1} Appellant Karen Arshinkoff ("appellant") appeals the decision of the Cuyahoga Falls Municipal Court that denied her motion to dismiss concluding Section 1207.17(e)(1) of the Codified Ordinances of the City of Hudson is constitutional. The following facts give rise to this appeal.
 {¶ 2} Appellee City of Hudson ("appellee") issued four municipal civil infraction violation notices, to appellant, for violations of its Land Development Code that occurred on October 1 through October 6, 2004. Each notice cited a violation of Section 1207.17(e)(1) of the code which provides that temporary signs, in residential districts, are limited to eight square feet. Appellant had a "Bush/Cheney" sign, in her yard, that measured thirty-two square feet. Due to appellant's failure to pay the civil infraction notices, appellee cited appellant into Cuyahoga Falls Municipal Court for violating the code and failure to pay the civil infractions.
 {¶ 3} On October 20, 2004, appellant entered a plea of not guilty. On November 19, 2004, appellant filed a motion to dismiss alleging the sign ordinance was unconstitutional. The trial court denied appellant's motion on December 21, 2004, concluding "* * * the ordinance * * * is justified without reference to the content of the regulated speech, is narrowly tailored to serve a significant governmental interest of aesthetics and public safety, and leaves open ample alternative channels for communication of the information." Judgment Entry, Dec. 21, 2004, at 4.
 {¶ 4} On February 9, 2005, appellant withdrew her not guilty plea and entered a plea of no contest. The trial court found appellant guilty and stayed the fine and costs pending the appeal of this matter. Appellant sets forth the following assignment of error for our consideration:
 {¶ 5} "I. THE TRIAL COURT ERRED IN HOLDING THAT SECTION 1207.17(e)(1) OF THE CODIFIED ORDINANCES OF THE CITY OF HUDSON CONSTITUTIONALLY LIMITS THE TOTAL SIZE OF ALL POLITICAL SIGNS ON A RESIDENTIAL PROPERTY TO NO MORE THAN EIGHT SQUARE FEET."
 I {¶ 6} In her sole assignment of error, appellant maintains the trial court erred when it denied her motion to dismiss concluding that Section 1207.17(e)(1), of the codified ordinances of the City of Hudson, is constitutional. We agree.
 {¶ 7} The First Amendment to the United States Constitution provides that "Congress shall make no law * * * abridging the freedom of speech * * *." The limitation of the First Amendment is applicable to the states and to political subdivisions of the states by virtue of the Fourteenth Amendment. City ofPainesville Bldg. Dept. v. Dworken Bernstein Co., L.P.A.,89 Ohio St.3d 564, 566, 2000-Ohio-488, citing Gitlow v. People ofState of New York (1925), 268 U.S. 652; Lovell v. City ofGriffin (1938), 303 U.S. 444. In Ohio, Section 11, Article I of the Ohio Constitution states that "[e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."
 {¶ 8} Over the years, the federal courts have had numerous opportunities to address the issue of political messages and theFirst Amendment. In the City of Painesville Bldg. Dept.
decision, the Ohio Supreme Court summarized the holdings of some of these federal cases and explained as follows:
 {¶ 9} "The posting of signs displaying political messages is a traditional method of speaking and, indeed, `[c]ommunication by signs and posters is virtually pure speech.' Arlington Cty.Republican Commt. v. Arlington Cty., Virginia (C.A.4, 1993),983 F.2d 587, 593, quoting Baldwin v. Redwood (C.A.9, 1976),540 F.2d 1360, 1366. A law regulating a property owner's right to erect a yard sign affects both the owner's and the candidate'sFirst Amendment rights. See Curry v. Prince George's Cty.
(D.Md. 1999), 33 F.Supp.2d 447, 449, fn. 3, citing Craig v.Boren (1976), 429 U.S. 190, 1941-97, 97 S.Ct. 451, 455-457,50 L.Ed.2d 397, 405-406. Moreover, the First Amendment has `its fullest and most urgent application' to speech uttered during political campaigns. McIntyre v. Ohio Elections Comm. (1995),514 U.S. 334, 115 S.Ct. 1511, 1519, 131 L.Ed.2d 426, 440, quotingBuckley v. Veleo (1976), 424 U.S. 1, 14-15, 96 S.Ct. 612, 632,46 L.Ed.2d 659, 685." City of Painesville Bldg. Dept. at 567.
 {¶ 10} The Supreme Court consistently affords more protection to political speech than commercial speech. Central Hudson Gas Elec. Corp. v. Pub. Serv. Comm. of New York, (1980),447 U.S. 557, 563. The Court has frequently reaffirmed that speech on public issues occupies the "highest rung of the hierarchy ofFirst Amendment values," and is entitled to special protection.Connick v. Myers (1983), 461 U.S. 138, 145, citing NAACP v.Claiborne Hardware Co. (1982), 458 U.S. 886, 913, Carey v.Brown (1980), 447 U.S. 455, 467.
 {¶ 11} Mindful of the special place political speech occupies in our society, we must examine Section 1207.17(e)(1) of the Codified Ordinances of the City of Hudson and determine whether said section violates the First Amendment. In Clark v. Communityfor Creative Non-Violence (1984), 468 U.S. 288, 293 and UnitedStates v. O'Brien (1968), 391 U.S. 367, 377, the United States Supreme Court set forth the test for determining whether a statute or ordinance violates the First Amendment guarantee of freedom of speech.
 {¶ 12} Under this analysis, we must first determine whether the limitation of eight square feet of temporary signage permitted under the ordinance burdens any speech. If we find any burden, we must then determine whether the square footage limitation imposes content neutral or content based restrictions. If it is content neutral, we must then decide whether the square footage limitation serves any substantial interest of Appellee City of Hudson. If appellee identifies any interest, we must then determine whether appellee narrowly tailored the square footage limitation to further this stated interest. Finally, we must also determine whether the square footage limitation leaves open ample alternative means for communicating the desired message.
 {¶ 13} In the case sub judice, we begin our analysis by finding the square footage limitation affects speech rather than conduct because "[c]ommunication by signs and posters is virtually pure speech." Baldwin v. Redwood City (C.A.9 1976),540 F.2d 1360, 1366. Speech is burdened by the fact that the square footage limitation prevents homeowners from expressing support for as many candidates as they desire. During years where there are numerous contested elections, homeowners may not be able to express support for all of the candidates they would like to support because to do so would exceed the square footage limitation. Further, if two voters living within the same household support opposing candidates, the square footage limitation restricts their ability to express their support through sign posting.
 {¶ 14} Because the square footage limitation burdens free speech, we must next determine whether Section 1207.17(e)(1) imposes content neutral or content based restrictions. The parties agree that the challenged section of the codified ordinances is content neutral. In City of Renton v. PlaytimeTheatres, Inc. (1986), 475 U.S. 41, the United States Supreme Court defined "content-neutral" speech regulations as those that "* * * are justified without reference to the content of the regulated speech." (Emphasis sic.) Id. at 48. We agree, with the parties, that the challenged ordinance is content neutral because it does not regulate based upon the message printed on the sign. Instead, the square footage limitation applies equally to any temporary sign, in a residential district, no matter the message it seeks to express.
 {¶ 15} Under the content-neutral test, we must determine whether the square footage limitation furthers any substantial governmental interest. Appellee City of Hudson defends the ordinance on the basis that it is necessary to its interest in promoting the public health, safety and welfare by insuring that signs do not adversely affect the city's aesthetics and do not distract or confuse motorists or pedestrians. The United State Supreme Court has recognized the reasons set forth by appellee are substantial governmental goals. See Members of City Councilof City of Los Angeles v. Taxpayers for Vincent (1984),466 U.S. 789, 805; Metromedia, Inc. v. City of San Diego (1981),453 U.S. 490, 507-508.
 {¶ 16} Having found substantial governmental interests, we next focus on whether Appellee City of Hudson narrowly tailored the square footage limitation to further these interests. Under this test, we cannot question whether narrowly tailoring the ordinance requires allowing more square footage. That issue is a legislative decision, not reviewable by the courts. However, we may require appellee to justify the square footage limitation by demonstrating a necessity for the ordinance.
 {¶ 17} We question appellee's argument that the ordinance is necessary for aesthetic purposes. We believe homeowners have the same strong incentive to keep their property values up and to prevent visual clutter in their yards and neighborhoods as does the City of Hudson. "The private interests of owners in the market value of their property should very substantially diminish the city's concerns regarding the unlimited proliferation of signs." Dimas v. City of Warren (E.D.Mich. 1996),939 F.Supp. 554, citing City of Ladue v. Gilleo (1994), 512 U.S. 43, 58.
 {¶ 18} We further find persuasive that appellee could not show any specific aesthetic or traffic problems that existed prior to the enactment of Section 1207.17(e)(1). Thus, the enactment of the challenged ordinance was not in response to any particular concerns. We also conclude appellee could promote its interests through less restrictive means. One less restrictive means already utilized by Appellee City of Hudson is to permit signs to be posted "* * * no closer than 10 feet from the pavement of the travel lane of the public or private street." See Table 1207.17(e)(1), fn. (b). Such a regulation addresses the safety concerns of vehicular and pedestrian traffic. Appellee could also regulate the design and condition of the temporary yard signs as well as the duration of the time period the temporary yard signs could be posted.
 {¶ 19} Finally, we conclude the square footage limitation does not provide sufficient alternatives for political speech. Although residents of the City of Hudson could pursue viable alternatives to express their political views such as: public speeches, door-to-door and public canvassing, distributing handbills, appearing at citizen group meetings, advertising, and posting signs in local businesses and automobiles, we conclude these alternatives are insufficient because they require too much time involvement or too much expense. The Fourth Circuit Court of Appeals reached the same conclusion in Arlington RepublicanCommt. v. Arlington Cty., Virginia, supra, at 594-595.
 {¶ 20} Also, appellee fails to recognize that the square footage limitation infringes on the right of the candidates as well as the homeowners. "Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. Precisely because of their location, such signs provide information about the identity of the `speaker.'" Cityof Ladue v. Gilleo, supra, at 56. Furthermore, "a person who puts up a sign at her residence often intends to reachneighbors, an audience that could not be reached nearly as well by other means." (Emphasis sic.) Id. at 57.
 {¶ 21} Accordingly, we conclude the challenged ordinance unconstitutionally infringes upon the First Amendment of the United States Constitution. We recognize our conclusion is in direct conflict with the decision rendered in Davis v. City ofGreen (1995), 106 Ohio App.3d 223, wherein the Ninth District Court of Appeals found constitutional the City of Green's ordinance limiting political signs, in residential areas, to a maximum of six square feet. In reaching this conclusion, the court determined the ordinance was narrowly tailored to serve the City of Green's significant governmental interest in preserving the safety and aesthetics of the city. Id. at 229.
 {¶ 22} Although we recognize that a city's goals of traffic safety and maintenance of its appearance are substantial, such a concern should not overshadow the basic constitutional rights of its citizens. As we noted above, there exists other means for Appellee City of Hudson to achieve these goals that are less intrusive on the First Amendment rights of its citizens.
 {¶ 23} Appellant's sole assignment of error is sustained.
 {¶ 24} For the foregoing reasons, the judgment of the Cuyahoga Falls Municipal Court, Summit County, Ohio, is hereby reversed.
Boggins, P.J., and Gwin, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Cuyahoga Falls Municipal Court, Summit County, Ohio, is reversed.
Costs assessed to Appellee City of Hudson.